UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY JAVIER MOREL-PINEDA,<br><br>Defendant. | CASE NO. CR18-142 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL AND DENYING GOVERNMENT'S MOTION |

## I. INTRODUCTION

This matter is before the Court on Defendant Johnny Javier Morel-Pineda's Motion for New Trial. Dkt. #68. Following a jury trial, Defendant was convicted of one count of distribution of methamphetamine under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). Dkts. #15, #58, and #59. Defendant maintains that he was denied a fair trial because a government witness possibly attempted to contact him before trial—a fact learned during trial and fully disclosed to the jury—to "bribe" Defendant. Defendant argues that this misconduct tainted the trial and that the interest of justice requires a new trial to avoid "a serious miscarriage of justice." Dkt. #68 at 1, 6. This conduct also served as the basis for several unsuccessful defense motions during trial, including a half-time motion to dismiss. Finding that Defendant's trial was fundamentally fair, and for the

ORDER – 1

following reasons, many of which were similarly noted by the Court during trial, the Court denies the Motion.[1]

## II. BACKGROUND

Defendant's criminal charge arose from a sale of methamphetamine to Mr. Anthony "Tony" Meyers who was working as a confidential source for law enforcement. Mr. Meyers, who was known to Defendant, contacted Defendant and they agreed on a location, amount of methamphetamine, and price for the sale. Law enforcement surveilled the transaction from a distance—though constant visual contact was not maintained—and observed Defendant return to his apartment following the transaction. Mr. Meyers wore a device that recorded the transaction and allowed law enforcement to listen in real time. Consistent with the recording, Mr. Meyers provided law enforcement with the purchased methamphetamine following the transaction.

More pertinent to this Motion, Defendant notified his counsel after the first day of trial that he had received communications prior to trial which may have been from Mr. Meyers—who was to testify. Further investigation revealed that on May 16, 2019, the Saturday before trial, Defendant received two messages on Facebook Messenger from an account named "Tony Debbie Meyers." The first, received at 12:42 p.m. was: "Do you want to win your trial? If you do, I will meet you at McDonald's to talk." Dkt. #63-4 (Trial Exhibit A-37). The second, received sixteen minutes later, indicated: "This is Tony txt me on messenger." *Id.* Additionally, Defendant provided evidence of a comment from the "Tony Debbie Meyers" account, at an unspecified time, on Facebook indicating: "Jonny if you want to win your trial meet me at McDonald's and we can talk. It's Tony." Dkt. #63-5 (Trial Exhibit A-38).

---

[1] Defendant has requested oral argument, but the Court finds it unnecessary to its resolution of the Motion. CrR 12(b)(9).

ORDER – 2

Defense counsel notified the government, and the government investigated the matter, ultimately sending a communication to defense counsel indicating: "Yes, we were able to determine from investigation that Tony's wife, Debbie (who shares access to the account), sent the message without Tony's prior knowledge." Dkt. #54-1. Defendant brought the matter to the Court's attention, seeking an evidentiary hearing into the circumstances of the messages. Dkt. #66 at 4:6–8:17. The Court denied the request on the basis that no mechanism existed for such a hearing and because the relevant witnesses were available to Defendant and he could inquire into the circumstances of the messages if he so choose. *Id.* at 12:4–13:8.

During cross-examination of Mr. Meyers, Defendant further developed the record regarding the circumstances of the messages. Defendant elicited, essentially, that Mr. Meyers shared the account with his wife, that they had discussed the possibility of sending similar messages, that he was made aware of them shortly after they were sent, that he believed they represented an attempt "to tamper with the integrity of [the] trial," and that he did not disclose the messages to the government. *Id.* at 124:9–130:7, 136:19–138:8.

As a result of Mr. Meyers' conduct coming to light during his testimony—namely, his involvement in the circumstances surrounding the messages being sent and unrelated violations of his agreements with law enforcement—the government indicated that "the DEA does intend to terminate Mr. Meyers as a source. They also intend to take steps to ensure that he's never hired again by the DEA, given everything [that has] happened here." Dkt. #67 at 4:8–12.

Following the close of the government's case in chief, Defendant sought a motion to dismiss or, alternatively, for a continuance. Dkt. #66 at 183:13–187:17. Defendant argued, in essence, that the messages represented an attempt by Mr. Meyers to bribe Defendant with untruthful testimony. Defendant maintained that Mr. Meyers' testimony therefore represented a

ORDER – 3

due process violation, equating it to situations where the government presented testimony it knew was perjured. Further, Defendant argued that without Mr. Meyers' testimony, the government's case would fall apart, and that the veracity of Mr. Meyers' testimony therefore went to the fundamental fairness of the trial.

The Court denied the defense motions. Dkt. #67 at 5:20–8:4. In so doing, the Court noted that the invitation "to meet was actually never accepted," that the messages were open to "various interpretations," and that Mr. Meyers was not absolutely critical because the jury "could easily find that [Mr.] Meyers is not credible in the greater majority of his testimony and still find, and reasonably so, that all the other evidence presented by the government, free of any possible taint, is more than sufficient to return a verdict of guilty." *Id.* at 5:24–7:12. Further, the Court concluded that no due process violation had occurred because "the government was not involved" in the messages being sent and "was not even aware of it until alerted by the defense." *Id.* at 7:13–19.

### III.  DISCUSSION

**A. Motion for New Trial**

Rule 33 of the Federal Rules of Criminal Procedure allows a defendant to move for a new trial after a verdict is rendered and allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). "A motion for a new trial is addressed to the sound discretion of the trial court." *Evalt v. United States*, 382 F.2d 424, 428 (9th Cir. 1967). In exercising its discretion, the trial court is permitted to weigh the evidence and evaluate the credibility of witnesses. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)).

ORDER – 4

Defendant argues that Mr. Meyers' testimony was so central to the government's case that his misconduct tainted the entire trial but does little to pinpoint the unfairness he allegedly endured. To be clear, the Court condemns Mr. Meyers' actions—whatever they may be—as regards the messages received by Defendant. But, as the Court ruled during trial, the purpose of the messages is unclear and does not indicate what was to transpire should a meeting have occurred. Dkt. #67 at 6:20–7:4. Defendant maintains that Mr. Meyers intended to "bribe" Defendant—presumably that Mr. Meyers would alter his trial testimony to benefit Defendant in exchange for Defendant giving Mr. Meyers some benefit. Maybe, but the meeting never occurred. All that can reasonably be inferred from the messages is that Mr. Meyers is willing to disregard his oath to testify truthfully.

Defendant does not provide any evidence that Mr. Meyers' testimony was in fact untruthful. Nor is there any evidence indicating that the government had any reason to believe that Mr. Meyers' testimony would be or was untruthful. *C.f. United States v. Endicott*, 869 F.2d 452, 455 (9th Cir. 1989) ("if the prosecution knowingly uses perjured testimony, or if the prosecution knowingly fails to disclose that testimony used to convict a defendant was false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict" (citing *United States v. Bagley,* 473 U.S. 667, 678–80 (1985)). In fact, Mr. Meyers' trial testimony was consistent with the evidence introduced and the testimony of other witnesses. The question of Mr. Meyers' willingness to perjure himself therefore was impeachment material going to his credibility.

Defendant had an opportunity to fully examine and impeach Mr. Meyers in front of the jury regarding his knowledge of the messages, his involvement in creating the messages, and the circumstances surrounding the sending of the messages. Defendant does not point to any

ORDER – 5

evidence that he was not allowed to present to the jury or what evidence further investigation would reveal that is not additional impeachment material. *C.f. United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992) (noting that impeaching evidence will generally not be material because "[a]t most, it will provide the trier of fact with a reason to find the witness' testimony incredible"). Even further, this was not the only basis on which Defendant was able to impeach the credibility of Mr. Meyers. But again, as the Court has already ruled, "[t]he jury in this case could easily find that [Mr. Meyers] is not credible in the greater majority of his testimony and still find, and reasonably so, that all the other evidence presented by the government, free of any possible taint, is more than sufficient to return a verdict of guilty." Dkt. #67 at 7:8–12.

The Court also is not persuaded by Defendant's argument that he suffered an injustice because the government terminated any ongoing relationship with Mr. Meyers. Specifically, Defendant argues that the government's decision demonstrates the seriousness of Mr. Meyers' corruption and that, had the government learned of his activities earlier, the government would not have used Mr. Meyers in Defendant's trial.[2] Dkt. #68 at 7–8. But the government had several practical reasons to terminate its association with Mr. Meyers apart from any impact Mr. Meyers had on the fairness of Defendant's trial.[3] Because the government is interested in building cases which it can successfully prosecute, the Court does not find it unusual that the government would decide not to conduct future investigations with a CS who has possibly expressed a willingness to perjure himself, a willingness to tamper with the integrity of prosecutions, and a willingness to violate the conditions the government imposes on its CSs. And again, the jury was fully

---

[2] A contention with which the government apparently disagrees. Dkt. #73.

[3] Again, Defendant does not actually pinpoint the unfairness.

ORDER – 6

apprised of this additional reason to distrust Mr. Meyers' testimony due to his, perhaps, tenuous relationship with the truth.

Lastly, Defendant argues that he was perhaps compelled to take the stand against the advice of counsel because "the government's endorsement of [Mr.] Meyers not only impacted the defendant's assessment of the value of his own testimony, but it also undermined his confidence in the criminal justice system." Dkt. #68 at 8. But, because the Court has already concluded that Mr. Meyers' involvement in the trial was not fundamentally unfair to Defendant, the Court does not find it necessary to reconsider Defendant's knowing and voluntary waiver of his right not to testify.

**B. Subsequent Filings**

After briefing on Defendant's Motion for a New Trial was complete, the government filed a Motion for Leave to File Surreply in Opposition to Defendant's Motion for New Trial. Dkt. #73. The government's motion sought leave to dispute Defendant's "factual allegation that, had the government 'known in advance of the misconduct, they never would have endorsed [Mr. Meyers].'" Dkt. #73 at 1. Finding a surreply unnecessary, the government's motion is denied as moot.

Defendant also filed a Notice of Supplemental Materials in Support of Motion for New Trial. Dkt. #74. Defendant's supplemental materials provide evidence of an additional Facebook Messenger contact made by an account named "Anthony Meyers" on March 17, 2019, the Sunday before trial. Dkt. #74-1. The contact consists of a waiving hand "emoji" and gives Defendant the option to reply. The Court concludes that this additional, non-substantive, and unsuccessful attempt to contact Defendant does not alter the Court's prior analysis.

ORDER – 7

## IV. CONCLUSION

Accordingly, having reviewed Defendant's Motion, the briefing and the supporting materials, including Defendant's Notice of Supplemental Materials in Support of Motion for New Trial (Dkt. #74), and the remainder of the record, the Court finds and ORDERS that:

1. Defendant's Motion for a New Trial (Dkt. #68) is DENIED.
2. Government's Motion for Leave to File Surreply in Opposition to Defendant's Motion for New Trial (Dkt. #73) is DENIED as moot.

DATED this 28 day of May 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE